IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| RICKY ADAMINI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:02-1188 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Ricky Adamini (hereinafter referred to as "Claimant"), filed an application for SSI on February 10, 2000 (protective filing date), alleging disability as of February 1, 1994, due to dizzy spells, nerves, problems with his right ankle, knee and back, blood pressure problems, varicose veins, and heart problems.[1] (Tr. at 15, 39, 50-52, 54.) The claim was denied initially and upon reconsideration. (Tr. at 39-41, 43-45.) On October 20, 2000, Claimant requested a hearing before

---

[1] Claimant previously filed an application for SSI on February 16, 1994, and was awarded benefits. (Tr. at 14.) However, when his claim was reviewed on redetermination, it was determined that he was no longer disabled. (Tr. at 14.) Claimant filed a request for a hearing before an Administrative Law Judge, but failed to attend his scheduled hearing and the matter was dismissed on October 28, 1999, by Administrative Law Judge John Murdock. (Tr. at 14, 31-33.)

an Administrative Law Judge (ALJ). (Tr. at 46.) A hearing was held on February 5, 2001, before the Honorable David S. Antrobus. (Tr. at 129-145.) By decision dated February 23, 2001, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-23.) The ALJ's decision became the final decision of the Commissioner on March 12, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-9.) On October 2, 2002, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the

Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we

>consider when we rate the degree of your functional limitation.
>  (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>  (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since his application filing date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from the combination of severe impairments including osteoarthritis affecting his back, right shoulder and right ankle with associated pain, hypertension, anxiety, and depression. (Tr. at 17, 22.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18-19.) The ALJ then found that Claimant had the residual functional capacity to perform sedentary work. (Tr. at 20-21.) The ALJ found that Claimant "can sit six hours in an eight hour work day, stand and walk two hours, lift weights of up to ten pounds, and sustain concentration, persistence and pace so as to perform simple, routine, unskilled tasks." (Tr. at 23.) The ALJ further found that due to his mild to moderate pain, anxiety, depression, and depression, Claimant was non-

exertionally limited to performing simple, routine, unskilled tasks. (Tr. at 23.) At step four, the ALJ concluded that Claimant had no past relevant work. (Tr. at 21, 23.) Nevertheless, on the basis of Vocational Expert ("VE") testimony, the ALJ concluded that Claimant could perform jobs such as a production inspector and an assembler, which exist in significant numbers in the national economy. (Tr. at 21-23.) On this basis, benefits were denied. (Tr. at 22-23.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on August 1, 1961, and was 39 years old at the time of the administrative hearing. (Tr. at 21,133.) Claimant has an eighth grade education. (Tr. at 15, 133.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in assessing Claimant's pain and credibility and (2) the ALJ failed to consider Claimant's impairments in combination. The Commissioner asserts that these arguments are without merit and that the ALJ's decision is supported by substantial evidence.

1. Pain and Credibility Assessment

Claimant first argues that the ALJ improperly evaluated his subjective complaints of pain and other symptoms and erred in finding Claimant not entirely credible. (Pl.'s Br. at 11-13, 15-16.) The Commissioner argues that the ALJ's analysis was in accordance with the applicable law and Regulations.

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 416.929(b) (2003); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical

evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4) (2003). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (I) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3) (2003).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of

the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 19-20.) The ALJ found, with regard to the threshold test, that the evidence "establishes the existence of impairments reasonably likely to produce the symptoms and limitations alleged by the claimant, i.e., osteoarthritis, hypertension, anxiety and depression." (Tr. at 20.) The ALJ therefore proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20.) The ALJ noted the requisite factors, and then analyzed them in the opinion, concluding that

the Claimant's complaints suggested a greater severity of impairment than could be shown by the objective medical evidence. (Tr. at 19-20.)

The ALJ noted that Claimant denied having any problems taking care of his personal needs, and reported his activities as walking to the store for up to half an hour, grocery shopping, washing dishes and preparing simple meals. (Tr. at 20, 71.) Despite his allegations of nervousness, depression, and his dislike of being around people, the ALJ noted that Claimant occasionally went to the store, visited with relatives, and watched television. (Tr. at 20, 73, 136-37.) Additionally, Claimant reported improvement in his psychiatric impairments after only a few months of treatments with medication, and the ALJ found that these impairments caused "no more than a mild degree of limitation of his activities of daily living, social functioning, and concentration, persistence or pace." (Tr. at 19, 89-94.) The ALJ found Claimant's activities, in conjunction with his conservative medical care and absence of side effects from medications, "suggest a capacity for limited amounts of standing, walking and lifting, and the ability to sustain concentration and attention on simple, routine tasks despite his pain, dizziness, depression and anxiety." (Tr. at 20.)

The ALJ further noted that Claimant's treating physician, Dr. Gosien, reported only minimal findings on physical examination, including tenderness of the back and right ankle and no impairments in ranges of motion or neurological deficits. (Tr. at 20, 102-03, 121.) Although Dr. Gosien reported that a CT scan revealed herniated and bulging discs, the ALJ emphasized that the report is not contained in the record. (Tr. at 18, 102.) See 20 C.F.R. § 416.927(d)(3) (2004) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ also noted that neither Dr. Gosien nor the consulting examiner, Dr. Evans, referred Claimant for any specialized medical care, hospitalizations, or surgery, or prescribed the use of a brace or any other

assistive device. (Tr. at 20.) The ALJ found that Claimant's medical treatment consisted of moderate pain medications, which did not cause any side effects. (Tr. at 20.) As the Commissioner notes, Claimant advised Dr. Evans that his back and chest pains were improved with medication. (Tr. at 95.)

As the Commissioner points out, the ALJ's RFC assessment is consistent with Claimant's self-reported abilities. The ALJ found that Claimant could perform work at an exertional level less than the exertional level suggested by Dr. Evans and Dr. Reddy, and which took into account Claimant's osteoarthritis and associated pains, hypertension, and subjective complaints of chest pain. (Tr. at 20.) The ALJ limited Claimant to sitting six hours in an eight hour work day, standing and walking two hours, and lifting weights of ten pounds or less. (Tr. at 20, 23.) Additionally, the ALJ limited Claimant to performing simple, routine, unskilled tasks. (Tr. at 20, 23.)

The Claimant does not assert that the ALJ failed to engage in the two-step analysis, and fails to specifically assert how the ALJ improperly assessed his pain and credibility. Claimant merely notes some of his medical conditions and restates his allegations of subjective pain. (Pl.'s Br. at 11-13.) As noted, the ALJ properly evaluated Claimant's pain and credibility using the requisite analysis and considering the applicable factors.

Additionally, the evidence submitted for the first time to the Appeals Council does not demonstrate that Claimant was disabled, as suggested by Claimant. (Pl.'s Br. at 13.) In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(*en banc*)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed

11

the outcome." Id. Considering evidence which Claimant submitted to the Appeals Council and the Appeals Council included in the record, the Fourth Circuit concluded in Wilkins, 953 F.2d at 96, that Courts reviewing decisions of the Social Security Administration must consider "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Thus, reviewing Courts must consider new evidence which the claimant submits while the decision of the Appeals Council is pending even when the Appeals Council denies the claimant's request for review. See also Adkins v. Barnhart, 2003 WL 21105103, * 5 (S.D. W.Va. May 5, 2003)(Stanley, M.J.). In deciding whether to remand the case to the Commissioner on the basis of additional evidence, the Court, in reviewing the ALJ's decision, "in the light of evidence which the ALJ never considered, and thus never evaluated or explained" must "determine whether this additional evidence creates a 'conflict,' is 'contradictory,' or 'calls into doubt, any decision grounded in the proper medical reports.'" Id. (*citing* Camper v. Barnhart, __ F.Supp.2d __, 2005 WL 1995446, *5 (W.D. Va. Aug. 16, 2005)).

In the instant case, the additional evidence was considered by the Appeals Council and made a part of the record. (Tr. at 5-9.) The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(b) (2004), Hawker v. Barnhart, 235 F.Supp.2d 445, 445-46 (D. Md. 2002). The additional evidence consists of ten progress notes from Dr. Gosien, three of which were prepared prior to the ALJ's decision. (Tr. at 125-27.) These three notes therefore, are not considered "new" because they were available to Claimant at the time of his administrative hearing. Furthermore, the ten progress notes as a whole are not material because they would not have changed the ALJ's decision had he considered them. The notes reflect Claimant's continued

12

complaints of recurrent low back and chest pain. (Tr. at 125-27.) On four occasions, Claimant reported his pain levels as either an eight or nine. (Tr. at 126-27.) Despite, the reported pain levels, Dr. Gosien continued Claimant's conservative treatment with the same medications. As the Commissioner notes, Dr. Gosien did not include any clinical or laboratory findings to corroborate Claimant's reported severe pain. Accordingly, remand to consider the additional evidence is not warranted because the additional evidence is neither new or material, nor conflicts, contradicts, or calls into doubt the ALJ's decision.

Upon a careful review of the record, the Court finds the ALJ's analysis of Claimant's pain and credibility proper and in accordance with the applicable law and Regulations. The ALJ did not find that Claimant suffered no symptoms; he merely found that the symptoms were not as severe as Claimant alleged. (Tr. at 19-20.) The ALJ found that Claimant could perform sedentary work with additional limitations, and therefore took into account most of Claimant's complaints. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence.

2. ALJ's Consideration of Impairments in Combination

Claimant further argues that the ALJ did not properly consider the combined effects of his impairments. (Pl.'s Br. at 14-15.) The Commissioner asserts that this argument is without merit.

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495

F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of Claimant's impairments in combination and "fractionalized" the impairments. (Pl.'s Br. at 15.) The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 17-19.) The ALJ then discussed Claimant's impairments, finding that his osteoarthritis affecting his back, right shoulder and right ankle, with associated pain, hypertension, anxiety and depression, were severe impairments. (Tr. at 17.) The ALJ specifically found, however, that the record did not "reflect an impairment or combination of impairments imposing such functional limitations as to be medically equivalent in severity to any section of Appendix 1." (Tr. at 19.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting him to sedentary work, lifting no more than 10 pounds; standing or walking no more than two hours in an eight hour work day; sitting no more than six hours; and requiring only simple, routine, unskilled, repetitive tasks. (Tr. at 20, 23.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 22.)

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Claimant's argument is therefore without merit.

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, for the reasons set forth in this Memorandum Opinion and by the Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2006.

R. Clarke VanDervort
United States Magistrate Judge